UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NUMBERS 3:18-cr-89-RLM; |
| | ) | 3:18-cr-113-RLM |
| JUNIE CEPEDA IBARRA | ) | |

OPINION AND ORDER

Fact issues can bedevil the resolution of motions for compassionate release. Inmates can't demand independent medical examinations or examine doctors, the Bureau of Prisons isn't structured to produce specialized medical reports on inmates on a court's request, and a court has no means to inquire more deeply into the meaning of an entry in an inmate's medical records. Courts and attorneys are left to do the best we can with what is available.

Junie Cepeda Ibarra is before me for the fourth time on a motion for compassionate release. I sentenced her to an aggregate term of 151 months in January 2019 for possession with intent to distribute methamphetamine, possession of stolen mail, wire fraud, and aggravated identity theft. In July 2021, she filed what would be her first motion for compassionate release, based on the risk of COVID-19. I denied that motion in September 2021 because she had been vaccinated against COVID-19. See United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021). Ms. Ibarra appealed that ruling and voluntarily dismissed the appeal in November 2021.

In December 2021, Ms. Ibarra filed her second motion, this one based on a statement by a Bureau of Prisons doctor named David Duncan, who concluded that Ms. Ibarra had less than eight months to live and recommended that her family gather as soon as possible. The government responded with a report dated two days later from a Bureau of Prisons medical director named Elizabete Stahl, opining that Ms. Ibarra wasn't showing the sort of symptoms one would expect of a person in her last eighteen months of life. After some back and forth about exhaustion, I denied that motion in March 2022 in an order drafted for speed at the cost of clarity. Ms. Ibarra appealed that ruling, and the court of appeals reversed in September 2022 for a better explanation. I heard argument and reserved ruling, ordering the government to submit any recent diagnosis or prognosis by the Bureau of Prisons. The government had none to submit, and I issued an opinion in October 2022 that I hoped better explained my denial of Ms. Ibarra's motion for compassionate release.

I explained that I had denied the motion because Ms. Ibarra's imminent death was the only extraordinary and compelling reason she relief on — that she would soon die, and wanted to be allowed to do so among her loved ones. The evidence on that issue was in equipoise — there was no basis to credit on doctor's opinion over the other — and since Ms. Ibarra bore the burden of proving her entitlement to compassionate release, her motion had to be denied. I tried to explain the March order's foggy references to the statutory purposes of sentencing:

2

the weighing of the factors in 18 U.S.C. § 3553 might differ were the movant about to die. Ms. Ibarra didn't appeal the October 2022 ruling.

Ms. Ibarra filed the motion before me today in March 2023. Dr. Duncan's December 2021 report had recommended that Ms. Ibarra be transferred to a federal medical facility where she could receive a medication called Trepostinil through infusion to treat her severe pulmonary arterial hypertension and congestive heart failure. Ms. Ibarra was transferred to the federal medical facility at Carswell, where she has received oral medication but no transfusion of Trepostinil or anything else. Dr. Duncan's and Dr. Stahl's December 2021 reports agreed that Ms. Ibarra's severe pulmonary arterial hypertension and congestive heart failure would be terminal; their disagreement related only to how soon her death should be expected (though Dr. Stahl made no mention of Trepostinil). In this motion, Ms. Ibarra maintains that even if her death is merely inevitable rather than immediate, the Bureau of Prisons isn't providing the care both doctors agreed she needs, and she asks for compassionate release on that ground.

As Ms. Ibarra points out [Doc. 99 in 3:18-cr-89], and as our court of appeals has noted, United States v. Williams, ___ F.4th ___, ___, 2023 WL 2924346 at *1, No. 22-1212, slip op. at 2 (7th Cir., Apr. 13, 2023), changes to compassionate release may be afoot in the sentencing guidelines, but it would inappropriate, given the nature of Ms. Ibarra's concerns, to wait to see what standards might emerge in November.

"A district court may grant a motion for a reduced sentence if (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission,' and (3) the reduction is appropriate in light of the section 3553(a) sentencing factors." United States v. Williams, ___ F.4th at ___, 2023 WL 2924346 at *2, slip op. at 5.

It is at this point in the discussion that this opinion's opening paragraph becomes pertinent. The parties — with little else to work with — have submitted Ms. Ibarra's BOP medical records, which contain some statements from her treating medical personnel and other health care personnel from Parkland Memorial Hospital, where she was hospitalized for a time. Neither the parties nor the court are able to ask what was meant by a statement, or pursue follow-up inquiries. But based on my layman's examination of the medical records, I am less persuaded than Ms. Ibarra's counsel that doctors said she *needs* transfusion medicine as distinct from *recommending* it, or opining that she *might benefit from it*. I can find no place in the records (through my unguided tour) where either the December 2021 BOP doctors or the Parkland Memorial doctors discuss the oral medications that Ms. Ibarra is taking, or whether or why those medications would be less efficacious than Trepostinil in treating Ms. Ibarra's conditions. And perhaps most importantly, nothing in this record would support a finding that Ms. Ibarra could be placed on Trepostinil if she were granted compassionate release.

4

There is some suggestion in the Parkland Memorials doctors' comments that Trepostinil might be unavailable in the BOP because it is too expensive.

Ms. Ibarra cites to many cases (including one from this district) that have held that the BOP's failure to provide medical treatment can contribute to a finding of an extraordinary and compelling circumstance, and I don't understand the government to argue to the contrary. But none of those cases support the proposition that the failure to provide a preferred course of treatment rather than another medically accepted course of treatment fills the bill.

Nothing in this record is inconsistent with the oral medications being nearly as effective as the proposed transfusion; nothing in this record could refute the proposition (for which there is also no evidence) that the oral medications are keeping her alive.

Through no fault of the lawyers in case, or of Ms. Ibarra herself, this record doesn't tip in either party's direction. Perhaps she will die without Trepostinil; perhaps she will die sooner without Trepostinil; perhaps the oral medication she is taking will extend her life as long as, or maybe almost as long as, Trepostinil would; perhaps she would have no better chance of being administered Trepostinil as a former inmate than she has now.

The best case scenario for compassionate release would be findings that Ms. Ibarra suffers from terminal conditions that require treatment she isn't getting in the Bureau of Prisons, and that she could get that treatment were she not

5

dependent on the Bureau of Prisons for her medical. Again, I don't think this record can get a trier to those findings. But assuming it did, the court would turn to whether compassionate release would be consistent with the factors in the federal sentencing statute. 18 U.S.C. § 3553(a). It would not be consistent.

The nature and circumstances of Ms. Ibarra's crimes are remarkably aggravating, if for no reason other than the unique diversification of her criminal activity. I have neither seen nor heard of a defendant being convicted of possession with intent to distribute roughly a quarter pound of nearly pure methamphetamine shipped to her from California on a monthly basis for more than six months, *plus* stealing checks and drivers licenses from mailboxes so that she could cash checks, create checks, and create false identifications based on the stolen mail to acquire credit cards, ultimately using the personal identifiers of 50 or more people, with the checks alone adding up to more than $111,000. Junie Ibarra was a one-woman crime spree. She did all of this within three months of release from a mail fraud sentence, *and* while suffering from pulmonary hypertension. In her guideline calculations, her drug quantity was so great, that her six-figure, 50-victim fraud wasn't even considered.

Ms. Ibarra's criminal record is long, steady, and serious. She has somewhere in the ballpark of eight felony convictions. She was convicted of two grand thefts in 1993, burglary in 1998, forgery (twice) in 1999, burglary and two counts of receiving stolen property in 1999, and was sentenced to eight years in

6

2001 for a series of identity theft-related cases. At the time of her sentencing, she faced a series of serious charges in an Indiana superior court that sound as though they were part of the course of conduct that gave rise to her federal sentence.

Ms. Ibarra had a difficult childhood that she says involved sexual abuse, and is a long-time methamphetamine user. Her health has been poor for a long time, though it no doubt is worse now than it was when she was sentenced. At sentencing, I found that she posed "a significantly higher risk of future criminal conduct than most defendants who pass through the courts." [Doc. 43, at 6 in 3:18-cr-89].

Ms. Ibarra points out that the sentencing statute requires consideration of the need to provide medical care to the defendant in the most effective manner, and points to the apparent or effective unavailability of needed transfusion medicine in the Bureau of Prisons. For that factor to support compassionate release, as already noted, the court would have to be able to find that Ms. Ibarra could get Trepostinil if she were released — and that is a most uncertain proposition.

Ms. Ibarra has served a bit more than one-third of the sentence imposed in 2019 — less than half, but a significant period of time. Her expected release date is in 2028. Ms. Ibarra hasn't demonstrated any rehabilitation, but neither has she been in a position to do so.

7

In light of the seriousness of the crimes that led to this sentence and the 25-year criminal career that preceded it, compassionate release would not be consistent with the factors in the federal sentencing statute.

The court DENIES the defendant's motion for compassionate release [Doc. 91 in 3:18-cr-89; Doc. 64 in 3:18-cr-113].

ENTERED:  April 19, 2023

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Judge
United States District Court

cc: J. Ibarra